UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS ROBERSON,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>PAUL COPENHAVEN,<br><br>　　　　Respondent. | Case No.: 1:12-cv-01074-JLT<br><br>ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION (Doc. 12)<br><br>ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE FILE<br><br>NO CERTIFICATE OF APPEALABILITY IS REQUIRED |

　　　Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. On August 1, 2012, Petitioner filed his written consent to the jurisdiction of the Magistrate Judge for all purposes. (Doc. 8). On September 13, 2012, Respondent filed his written consent to the jurisdiction of the Magistrate Judge for all purposes. (Doc. 10).

**PROCEDURAL HISTORY**

　　　Petitioner is in custody of the United States Bureau of Prisons ("BOP") serving a 120-month sentence pursuant to his 2004 conviction in the United States District Court for Northern District of Mississippi for a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). (Doc. 12-1, Ex. 1, p. 2; Attach. 1, p. 3; Doc. 1, Attach., p. 9).

　　　The federal possession charge arose out of an incident on December 24, 1999 in which two

1

individual were murdered. (Doc. 12-1, Ex. 1, p. 3). On May 31, 2000, Petitioner was indicted by the State of Mississippi on two counts of murder and as being a habitual offender. (Id., Attach 2, p. 10). Petitioner was indicted by federal authorities in the Northern District of Mississippi on the possession charge on June 12, 2002, while Petitioner was in state custody pending trial. (Doc. 12-1, Ex. 1). For the next two years, Petitioner was transferred from state custody to federal custody on three occasions: (1) from February 4, 2003 through February 11, 2003; (2) from November 26, 2003 through December 15, 2003; and (3) April 7, 2004. (Doc. 12-5, Ex. 1). Each transfer was effectuated through a petition for writ of habeas corpus ad prosequendum ("PWHCAP"), and, after each occasion, Petitioner was returned to the primary custody of the State of Mississippi. (Id.).

On April 7, 2004, the last occasion on which Petitioner was transferred to federal custody pursuant to a PWHCAP, he was sentenced to a 120-month prison term; however, the sentencing judge made no indication whether the sentence was to be concurrent or consecutive to any future state conviction. (Id.). On June 19, 2006, Petitioner pleaded guilty to two counts of manslaughter and sentenced to a state prison term of ten years. (Id.). The state sentencing court ordered the sentence to run consecutive to the federal sentence. (Id.). The State of Mississippi calculated Petitioner's sentence as having commenced on December 30, 1999, the date he was originally arrested by state law enforcement officers. (Id.). On April 4, 2009, Petitioner completed his state sentence, all of the time spent in the primary state custody from December 30, 1999 until that date having been credited against Petitioner's 10-year state sentence. (Id.).

Petitioner was not released upon completion of his state sentence, however, but was, instead, held on a federal detainer until April 9, 2009, at which time he was transferred to federal custody to serve his federal sentence. (Id.). The BOP calculated that Petitioner's federal sentence commenced on April 9, 2009, but credited Petitioner with the four days from April 5, 2009, the day after Petitioner completed his state sentence, until April 9, 2009. (Id.). Petitioner was not awarded any prior custody credit for the time from December 30, 1999 until April 4, 2009, while he was serving his state prison term. (Id.).

Subsequently, Petitioner filed a request with his prison facility, U.S.P. Atwater, to have his federal sentence designated as concurrent with his state sentence. (Doc. 12-1, Attach. 8). The BOP

2

construed Petitioner's request for pre-sentence credits as a request for a "*nunc pro tunc*" designation of a consecutive sentence and indicated it would review the request pursuant to the applicable federal regulations. (Id.).

On July 12, 2010, Petitioner filed the instant petition, raising two grounds for relief, although both are inter-related: (1) the BOP abused its discretion by refusing to afford Petitioner credits prior to April 9, 2009; and (2) the BOP wrongfully maintained that the credits could not be awarded, presumably from the denial of *nunc pro tunc* status, because the District Court had been silent on whether the federal sentence was consecutive or concurrent. (Doc. 1, p. 2). Respondent's motion to dismiss was filed on September 13, 2012, contending that the claims are unexhausted, that the BOP correctly calculated Petitioner's credits, that Petitioner is not entitled to a "*nunc pro tunc*" designation, and that this Court lacks jurisdiction to review such a determination. (Doc. 10). On October 14, 2010, Petitioner filed his Traverse, which the Court construes as an opposition to the motion to dismiss. (Doc. 15). On May 17, 2013, Respondent filed supplemental documentation regarding the BOP's decision to deny Petitioner's request for "*nunc pro tunc*" designation. (Doc. 16).

## **JURISDICTION**

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden v. Keohane, 921 F.2d 476, 479 (3rd Cir. 1990) (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent

in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parole).  A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Brown, 610 F.2d at 677.

In this case, Petitioner alleges that he is being unlawfully denied credit against his federal sentence.  Thus, Petitioner is challenging the execution of his sentence rather than its imposition; therefore, the claim is proper under 28 U.S.C. § 2241.  In addition, because Petitioner was incarcerated at the time of filing of the petition at the United States Penitentiary, Atwater, California ("USP Atwater"), which lies within the Eastern District of California, Fresno Division, this Court has jurisdiction to proceed.

## DISCUSSION

A. Procedural Grounds for Motion to Dismiss

As mentioned, Respondent has filed a Motion to Dismiss the petition as being unexhausted, for lack of jurisdiction, and because the claims are meritless.  Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).  Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's Motion to Dismiss is based on lack of exhaustion, lack of jurisdiction, and lack of merit.  Because Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal Answer, the Court will review Respondent's Motion to Dismiss

pursuant to its authority under Rule 4.

B. <u>Exhaustion</u>.

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. <u>Martinez v. Roberts</u>, 804 F.2d 570, 571 (9th Cir. 1986); <u>Chua Han Mow v. United States</u>, 730 F.2d 1308, 1313 (9th Cir. 1984); <u>Ruviwat v. Smith</u>, 701 F.2d 844, 845 (9th Cir. 1983). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. <u>Brown v. Rison</u>, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." <u>Id</u>. If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims. <u>See</u> <u>Francis v. Rison</u>, 894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative appeals); <u>see</u> generally <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87 (1977); <u>Tacho v. Martinez</u>, 862 F.2d 1376, 1378 (9th Cir.1988). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. <u>See</u> <u>Francis</u>, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); <u>Murray</u>, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); <u>Hughes v. Idaho State Bd. of Corr.</u>, 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro se litigants).

When informal resolution procedures fail to achieve sufficient results, the BOP makes available to inmates a three-level administrative remedy process: (1) a Request for Administrative Remedy ("BP-9") filed at the institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal ("BP-10") filed at the Regional Office for the geographic region in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal ("BP-11") filed with the Office of General Counsel. (Doc. 12-2, Ex. 2, p. 2). Those remedies are outlined in the BOP's Program Statement 1330.16, Administrative Remedy Program (12/31/2007),

5

and which is codified at Title 28 C.F.R. § 542.10 et seq. (Id.).

Here, Petitioner commenced his administrative remedies by filing a Request for Administrative Remedy with the warden of USP Atwater on October 6, 2010, seeking a recalculation of his credits. (Id., p. 3). This BP-9 was rejected because it raised more than one issue. (Id.). On October 20, 2010, Petitioner submitted a second BP-9, again seeking recalculation of his prior custody credits, claiming that his federal custody started "in or about 2003." (Id.). On October 28, 2010, the Warden of USP Atwater denied the second BP-9. (Id.).

Thereafter, Petitioner skipped the intermediate level that would have required filing a BP-10 by proceeding directly to the third level of review and filing a BP-11 with the Office of General Counsel on February 9, 2011. (Id.). This appeal was rejected because it had been filed at the wrong level. (Id.). On May 6, 2011, Petitioner again filed a BP-11 at the Office of General Counsel which was again rejected for the same reason. (Id.). Finally, on June 28, 2011, Petitioner filed a third BP-11 with the Office of General Counsel with the same result. (Id.). Petitioner filed no other appeals seeking administrative remedies.

From the foregoing chronology, it is apparent that Petitioner failed to follow the appropriate procedures to exhaust his administrative remedies within the BOP, that he did not appeal to the intermediate level of review at any time, thereby causing his subsequent attempts to appeal to the Office of Regional Counsel to be rejected for technical reasons instead of on their merits, and, therefore, that his claims have not been administratively exhausted. Accordingly, the Court agrees that the petition should be dismissed for lack of exhaustion.

C. <u>Calculation of Credits</u>.

However, even were the claims fully exhausted, Respondent contends that Petitioner's claim of entitlement to additional credits is without merit. The Court agrees.

The authority to compute a federal prisoner's sentence is delegated to the Attorney General, who exercises it through the Bureau of Prisons ("BOP"). United States v. Wilson, 503 U.S. 329, 334-35, 112 S.Ct. 1351, 1354-55 (1992); Allen v. Crabtree, 153 F.3d 1030, 1033 (9th Cir. 1998), *cert denied*, 525 U.S. 1091 (1999). "Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may

6

1  receive credit for any time already spent in custody." United States v. Smith, 812 F.Supp 368, 370
2  (E.D.N.Y. 1993); Jimenez v. Warden, FDIC, Fort Devens, Mass., 147 F.Supp.2d 24, 27
3  (D.Mass.2001); Chambers v. Holland, 920 F.Supp. 618, 621 (M.D.Pa. 1996), *affirmed by*, 100 F.3d
4  946 (3rd Cir. 1996). A federal sentence commences "on the date the defendant is received in custody .
5  . . to commence service of sentence at the official detention facility at which the sentence is to be
6  served." 18 U.S.C. § 3585(a); Thomas v. Brewer, 923 F.2d 1361, 1369 (9th Cir. 1991).

7  Here, there is no dispute that Petitioner is entitled to credit against his federal sentence starting
8  on April 9, 2009, and, likewise, no contention has been raised herein that he has not fully been given
9  such credit. The only issue is whether Petitioner is entitled to federal credits for any period of time
10 prior to April 9, 2009.

11 Thomas v. Brewer is dispositive of the date Petitioner's federal sentence commenced. In that
12 case, petitioner was arrested on state charges on May 10, 1964. While in state custody, he was
13 charged in federal court with armed bank robbery. On three occasions--June 15, 1964, June 23, 1964,
14 and August 4, 1964--petitioner was brought to federal court on a writ of habeas corpus ad
15 prosequendum to answer the federal charges. On the latter date, August 4, 1964, petitioner was
16 sentenced to the "maximum period prescribed by law." Thomas, 923 F.2d at 1363.

17 After his sentencing in federal court, petitioner was returned to state authorities in Los
18 Angeles, where, on August 28, 1964, he appeared in state court and was sentenced to two concurrent
19 terms. Id. On February 11, 1965, petitioner was sentenced in state court to a term of life on yet
20 another charge. Id. at 1364. Thomas began serving his state term in California State Institution,
21 Chino, on February 23, 1965. Id. On November 23, 1966, pursuant to a recommendation of the state
22 court, petitioner was turned over to U.S. marshals to enable concurrent service of petitioner's federal
23 and state terms. At an unknown date in December 1966, petitioner was delivered to the Federal
24 Correctional Institute, Lompoc, California. Id.

25 Thomas contended in a federal habeas petition that he should be given credit for time in
26 custody between August 4, 1964 and November 23, 1966. Id. The federal district court disagreed and
27 denied Thomas' petition. Id. The Ninth Circuit affirmed, rejecting Thomas' contention that he was in
28 federal custody at the time of his initial federal sentencing on August 4, 1964, and that his federal

1   sentence should therefore run from that date.  Id.   In so doing, the Ninth Circuit upheld the district

2   court's determination that Thomas' sentence commenced to run on November 23, 1964, the date he

3   was originally released from state prison and turned over to the custody of U.S. marshals for

4   concurrent service.  Id. at 1369 ("Thomas's sentence could not have begun to run until he was

5   received at an institution either to serve his sentence, or to be transported to another institution where

6   his sentence was to be served.").

7       Applying Thomas to this case, Petitioner was not "received into [federal] custody. . . to

8   commence service of sentence at the official detention facility at which the sentence is to be served"

9   either on the date he was originally sentenced in state court or on the three dates he was brought to

10  federal court prior to April 9, 2009 pursuant to a PWHCAP. Rather, on those earlier dates, Petitioner

11  was, despite being temporarily given over to federal authorities, still serving his state sentence and still

12  in the primary custody of the State of Mississippi.  By contrast, Petitioner was indeed "received into

13  [federal] custody" on April 9, 2009, four days after he completed his state prison term.  Thomas, 923

14  F.2d at 1369; see United States v. Segal, 549 F.2d 1293, 1301 (9th Cir. 1977)("a federal term cannot

15  begin until a prisoner has been received by federal authorities"); United States v. Graham, 538 F.2d

16  261, 265 (9th Cir. 1976)("Unless time is served in federal custody, it does not count as credit for time

17  served under a federal sentence"); Gunton v. Squier, 185 F.2d 470, 471 (9th Cir. 1950)("his Federal

18  sentence could not start to run until he was delivered to and received by the United States Marshal at

19  the place of detention to await transportation to the Federal penitentiary"). At that point, and only at

20  that point, was Petitioner in the primary custody of federal authorities.  Accordingly, April 9, 2009

21  was the date when Petitioner's federal detention "commenced."

22      Contrary to Petitioner's assertions, two reasons exist for why Petitioner is not entitled to

23  additional credit against his federal sentence for time credited to his state sentence under 18 U.S.C. §

24  3585, which provides, inter alia, that "[a] defendant be given credit for any time spent in official

25  detention prior to the date a sentence commences . . . that ***has not been credited against another***

26  ***sentence***."  18 U.S.C. § 3585(b) (emphasis added).   First, it was not a term served "as a result of the

27  offense for which the [federal] sentence was imposed," § 3585(b)(1), and, second, Petitioner had

28  already received credit for that time on his state sentence.  § 3585(b)(2). To give Petitioner credit for

his prior custody on both his state sentence and his federal sentence violates the plain language of § 3585(b) and is barred by United States v. Wilson, 503 U.S. 329, 337, 112 S.Ct. 1351 (1992) ("Congress made clear [in Section 3585(b) ] that a defendant could not receive a double credit for his detention time.").

Thus, it is evident that petitioner is not entitled to prior custody credit pursuant to § 3585(b). Put another way, all of the time Petitioner now seeks to have credited against his federal sentence has already been credited toward his state sentence.  Since Petitioner has received full credit against his state sentence for the all of the time spent in federal custody pursuant to the various writs of habeas corpus ad prosequendum, he is not entitled to any additional credit, i.e., effectively, double credits, against his federal sentence *for the same period of time*.  18 U.S.C. § 3585(b); see also United States v. Wilson, 503 U.S. 329, 337 ("Congress made clear [in 18 U.S.C. § 3585(b)] that a defendant could not receive a double credit for his detention time."); Boniface v. Carlson, 856 F.2d 1434, 1436 (9th Cir. 1988)(per curium)(applying the precursor to 18 U.S.C. § 3585, and concluding that "[s]ince the State of Florida gave [petitioner] credit on his state sentence for the period of time he was denied release [from state custody], he is not entitled to credit against his federal sentence for the same period of time"); Rios v. Wiley, 201 F.3d 257, 274-275 (3d Cir. 2000)("[T]he general rule prohibiting double credit articulated in section 3585(b) applies equally to situations where, as here, the prisoner was in federal control pursuant to a writ of habeas corpus ad prosequendum during the time period for which a pre-sentence credit is sought."); United States v. LaBeille-Soto, 163 F.3d 93, 99 (2d Cir. 1998)("[A] defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence.").

    D.  Nunc Pro Tunc Designation.

        1.  Jurisdiction To Review the BOP's Denial Of Nunc Pro Tunc Status.

Respondent contends that, because any *nunc pro tunc* designation is entirely discretionary with the BOP, this Court lacks jurisdiction to review those determinations.  Respondent cites no authority for the novel proposition that a federal district court cannot review the discretionary decisions of a federal governmental agency for an abuse of that discretion.  Even a cursory review of the case law in this area shows that federal courts at both the appellate and district court level have consistently

asserted jurisdiction to consider whether the BOP's discretionary decisions vis-à-vis a *nunc pro tunc* request are justified. E.g., Reynolds v. Thomas, 603 F. 3d 1144 (9th Cir. 2010)(reviewing the district court's denial of a petition challenging the BOP's denial of petitioner's *nunc pro tunc* request); Galarza-Villanueva v. Rios, 2012 WL 1143631 (E.D.Cal. April 4, 2012)(considering § 2241 petitioner's challenge to BOP's denial of his *nunc pro tunc* request); Clark v. Cate, 2011 WL 773314 (E.D. Cal. Feb. 28, 2011)(BOP's denial of *nunc pro tunc* request was neither arbitrary nor capricious). Accordingly, the Court concludes that it has jurisdiction to review the BOP's exercise of discretion regarding Petitioner's *nunc pro tunc* request.

        2. <u>Denial of Nunc Pro Tunc Status.</u>

Having concluded that the Court has jurisdiction to review the BOP's discretionary decision, the Court also concludes that the BOP did not abuse its discretion in denying Petitioner's *nunc pro tunc* request. The BOP has the authority to treat state and federal sentences as concurrent in the following relevant circumstances: (1) if an inmate requests a *nunc pro tunc* designation, and the district court does not object; or (2) if a state jurisdiction makes such a request. The BOP's decision to deny a request for *nunc pro tunc* designation is reviewed only to determine whether the denial was arbitrary and capricious. Taylor v. Sawyer, 284 F.3d 1143, 1149 (9th Cir. 2002).

The factors used by the BOP to evaluate requests for *nunc pro tunc* designation include:

    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence—
        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

In the instant matter, the BOP sent the federal sentencing court a letter on July 11, 2012, soliciting the position, if any, of the sentencing judge regarding concurrent or consecutive sentencing in Petitioner's case. (Doc. 16, Ex. A). When the district judge did not respond within sixty days, the BOP proceeded to consider Petitioner's *nunc pro tunc* request. (Id.). On September 7, 2012, Respondent denied Petitioner's request. (Id.). The Factors Worksheet under 18 U.S.C. § 3621(b) used

1  by the BOP in evaluating Petitioner's request for *nunc pro tunc status* is attached to Respondent's
2  supplemental filing of May 17, 2013. (Doc. 16, Attach. 9). The worksheet indicates that the BOP
3  considered all of the factors set forth in § 3261(b). (Id.). The BOP denied Petitioner's request based
4  on the seriousness of the offense, Petitioner's extensive prior criminal history--including armed
5  robbery, grand larceny, disorderly conduct, simple assault, possession of a firearm, and traffic
6  violations, in addition to prison disciplinary infractions while in federal custody—as well as the
7  district court's failure to respond to the BOP's letter. Id.

8  After reviewing this record, the Court does not find that the BOP's denial of Petitioner's request
9  for *nunc pro tunc* status was either arbitrary or capricious. The BOP considered the relevant factors,
10 detailing Petitioner's prior criminal history and present offenses as well as the sentencing judge's lack
11 of support for Petitioner's request. Accordingly, the Court rejects Petitioner's contention that the
12 BOP's denial of his *nunc pro tunc* request was an abuse of discretion. For all of these reasons, the
13 motion to dismiss the petition should be granted and the petition should be dismissed for lack of
14 exhaustion and denied on the merits.

15 Moreover, no certificate of appealability is required. The plain language of 28 U.S.C. §
16 2253(c)(1) does not require a certificate of appealability because this is an appeal from an order
17 denying a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, not a final order in a habeas
18 proceeding in which the detention complained of arises out of process issued by a State court. Forde
19 v. U.S. Parole Commission, 114 F.3d 878 (9th Cir. 1997); see Ojo v. INS, 106 F.3d 680, 681-682 (5th
20 Cir. 1997); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996).

21 **ORDER**

22 For the foregoing reasons, the Court HEREBY ORDERS as follows:
23 1. Respondent's motion to dismiss (Doc. 12), is GRANTED;
24 2. The petition for writ of habeas corpus (Doc. 1), is DISMISSED for lack of exhaustion and
25    DENIED on the merits;
26 3. The Clerk of the Court is DIRECTED to enter judgment and close the file;
27 ///
28 ///

4. No certificate of appealability is required.

IT IS SO ORDERED.

Dated:   **May 22, 2013**                            **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE